UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| DUANE JENSEN,<br><br>   Plaintiff,<br><br>  v.<br><br>LAS VEGAS METROPOLITAN POLICE DEPARTMENT; ANDREW WALSH, personally and in his official capacity; TROY BARRETT, personally and in his official capacity; JAMES BOZEK, personally and in his official capacity; DOES I-X, inclusive, and ROE CORPS. I-X, inclusive,<br><br>   Defendants. | Case No. 2:14-cv-00029-RFB-VCF<br><br>**ORDER**<br><br>Defendants' Motion for Summary Judgment (ECF No. 28) |

**I. INTRODUCTION**

This matter is before the Court on a Motion for Summary Judgment filed by Defendants Las Vegas Metropolitan Police Department (LVMPD), Andrew Walsh, Troy Barrett, and James Bozek. ECF No. 28. Plaintiff Duane Jensen, a corrections officer employed by LVMPD, alleges that Defendants violated his First Amendment rights by disciplining him for publicly criticizing an official act of another police officer. For reasons that will be discussed in further detail below, the Court finds that Jensen was entitled to First Amendment protection because he was speaking as a private citizen on a matter of public concern. The Court also finds that there are genuine issues of material fact with respect to whether Jensen was disciplined for his speech and whether Defendants participated in the issuance of that discipline. Defendants' motion is therefore denied.

**II. FACTUAL HISTORY**

Based upon the evidence presented by both parties and the Court's preliminary findings

of undisputed fact stated on the record at the hearing held on May 6, 2015, the Court finds the following facts to be undisputed.

Plaintiff Duane Jensen is employed as a Corrections Officer II with LVMPD. Defendants Walsh, Barrett, and Bozek were employed by LVMPD and assigned to its Internal Affairs Bureau (IAB) at all times relevant to this case. Walsh was a Lieutenant, Barrett was a Sergeant, and Bozek was an officer. On August 5, 2013, IAB received a complaint regarding Officer Jensen from an officer of the Boulder City Police Department. The Statement of Complaint asserts that Jensen was convicted of a misdemeanor in Boulder City for unlawfully dumping oil and did not promptly notify his supervisor when he received the citation or when he was convicted. It also states that Jensen "publicly criticized the official acts of a Boulder City Police officer to multiple residents of Boulder City" and that Jensen had been "walking around Boulder City on his days off, approaching people, identifying himself as a police officer, and telling them that [the Boulder City officer] lied on the witness stand." Statement of Compl. 1-2, Mot. Summ. J. Ex. B.

IAB conducted an internal investigation and issued a Disposition that sustained the complaint against Jensen on the following violations: (1) Civil Service Rule 510.2 – Standards of Conduct, for engaging in a criminal act; (2) LVMPD Procedure 5/101.52 – Criminal Violations by Law Enforcement Employees, for failing to promptly notify his supervisor of his citation or conviction; and (3) LVMPD Regulation 4/104.05, Criticism of Official Acts, for publicly criticizing an official act of another police officer. On January 2, 2014, Jensen received and signed an Adjudication of Complaint that listed the above three violations and stated that Jensen would receive a 40-hour suspension with a 20-hour option. On January 14, 2014, after returning from his suspension, Jensen received and signed a revised Adjudication of Complaint. The revised adjudication included the first two violations listed above, but did not include the violation for Criticism of Official Acts. The revised adjudication did not change the discipline imposed upon Jensen.

Jensen, proceeding *pro se* at the time, filed an Amended Complaint on April 21, 2014, alleging that Defendants violated his First Amendment rights by disciplining him for speech that

1 did not disrupt the operation of his workplace. ECF No. 8. Defendants filed a Motion to Dismiss
2 with Summary Judgment or, in the Alternative, Motion for More Definite Statement on April 24,
3 2014. ECF No. 10. On July 31, 2014, Plaintiff retained counsel. ECF No. 20. Discovery closed
4 on January 30, 2015, and Defendants filed a Motion for Summary Judgment on February 27,
5 2015. ECF Nos. 26, 28.

6 On May 6, 2015, the Court held a hearing on Defendants' Motion to Dismiss and Motion
7 for Summary Judgment. Minutes of Proceedings, ECF No. 35. At the hearing, the Court denied
8 the Motion to Dismiss and took the Motion for Summary Judgment under submission. Id. This
9 Order explains the Court's reasoning for denying the Motion for Summary Judgment.

**III.   LEGAL STANDARD**

Summary judgment is appropriate when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); accord Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). When considering the propriety of summary judgment, the court views all facts and draws all inferences in the light most favorable to the nonmoving party. Johnson v. Poway Unified Sch. Dist., 658 F.3d 954, 960 (9th Cir. 2011). Where the party seeking summary judgment does not have the ultimate burden of persuasion at trial, it "has both the initial burden of production and the ultimate burden of persuasion on a motion for summary judgment." Nissan Fire & Marine Ins. Co., Ltd. v. Fritz Companies, Inc., 210 F.3d 1099, 1102 (9th Cir. 2000).

"In order to carry its [initial] burden of production, the moving party must either produce evidence negating an essential element of the nonmoving party's claim or defense or show that the nonmoving party does not have enough evidence of an essential element to carry its ultimate burden of persuasion at trial." Id. If the movant fails to carry this burden of production, "the nonmoving party has no obligation to produce anything, even if the nonmoving party would have the ultimate burden of persuasion at trial." Id. at 1102-03. But if the moving party carries its initial burden, "the nonmoving party must produce evidence to support its claim or defense." Id.

- 3 -

at 1103. In doing so, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts . . . . Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." Scott v. Harris, 550 U.S. 372, 380 (2007) (alteration in original) (internal quotation marks omitted). However, the ultimate burden of persuasion on a motion for summary judgment rests with the moving party, who must convince the court that no genuine issue of material fact exists. Nissan Fire, 210 F.3d at 1102.

## IV. DISCUSSION

After review of the parties' arguments and evidence, the Court concludes that Defendants' Motion for Summary Judgment must be denied. First, the Court finds that Jensen spoke as a private citizen on a matter of public concern and that a genuine issue of material fact exists as to whether Jensen was disciplined for his speech. This finding precludes summary judgment on his First Amendment retaliation claim. Second, the evidence shows that Defendants Walsh, Barrett, and Bozek personally participated in the alleged violation of Jensen's First Amendment rights. Finally, Walsh, Barrett, and Bozek are not entitled to qualified immunity.

Before turning to the motion itself, as it stated on the record at the hearing on May 6, 2015, the Court reiterates that the exhibits submitted by Jensen in his Opposition are not authenticated and cannot be considered. Orr v. Bank of Am., NT & SA, 285 F.3d 764, 773 (9th Cir. 2002) ("A trial court can only consider admissible evidence in ruling on a motion for summary judgment. Authentication is a 'condition precedent to admissibility,' and this condition is satisfied by 'evidence sufficient to support a finding that the matter in question is what its proponent claims.'") (footnotes omitted) (quoting Fed. R. Evid. 901(a)). Jensen has not authenticated his exhibits using any of the methods provided by Federal Rule of Evidence 901(b) or 902. Id. at 774. Therefore, the Court cannot consider these exhibits in deciding the motion for summary judgment.

### A. First Amendment Retaliation Claim

The Court finds that Jensen was speaking as a private citizen on a matter of public

concern at the time he made the alleged critical comments about the Boulder City police officer. Further, the Court finds that the evidence creates a genuine issue of material fact as to whether Jensen was in fact disciplined for his speech. Summary judgment is therefore denied on the merits of Jensen's First Amendment claim.

### 1. Legal Standard

"The First Amendment shields public employees from employment retaliation for their protected speech activities." Hagen v. City of Eugene, 736 F.3d 1251 (9th Cir. 2013). Courts generally follow a two-step inquiry in deciding whether a public employee's speech is entitled to First Amendment protection and, if so, whether the government should nonetheless be permitted to curtail that speech. Lane v. Franks, 134 S.Ct. 2369, 2377-78 (2014). This inquiry "requires 'balanc[ing] . . . the interests of the [public employee], as a citizen, in commenting upon matters of public concern and the interest of the State, as an employer, in promoting the efficiency of the public services it performs through its employees.'" Id. at 2377 (alteration in original) (quoting Pickering v. Bd. of Educ., 391 U.S. 563, 568 (1968)).

The first step in this balancing inquiry "requires determining whether the employee spoke as a citizen on a matter of public concern. If the answer is no, the employee has no First Amendment cause of action based on his or her employer's reaction to the speech. If the answer is yes, then the possibility of a First Amendment claim arises." Id. at 2378 (quoting Garcetti v. Ceballos, 547 U.S. 410, 418 (2006)). In determining whether the employee spoke as a citizen on a matter of public concern, "[t]he question becomes whether the relevant government entity had an adequate justification for treating the employee differently from any other member of the general public." Lane, 134 S.Ct. at 2378 (quoting Garcetti, 547 U.S. at 418).

In addition to the two steps set forth in Lane, the Ninth Circuit has identified two additional factors to guide courts in undertaking the First Amendment balancing inquiry: "whether the plaintiff's protected speech was a substantial or motivating factor in the adverse employment action[,] . . . [and] whether the state would have taken the adverse employment action even absent the protected speech." Hagen, 736 F.3d at 1257.[1]

---

[1] In Hagen, the Ninth Circuit identified five factors, the failure to meet any one of which

2. <u>Jensen Spoke As a Private Citizen on a Matter of Public Concern</u>

The Court finds that Jensen spoke on a matter of public concern and as a private citizen, thus satisfying <u>Lane</u>'s first prong.

First, as a matter of law,[2] Jensen's comments relating to alleged corruption in a police department undoubtedly raise issues of public concern. "Speech involves matters of public concern when it can be fairly considered as relating to any matter of political, social, or other concern to the community, or when it is . . . a subject of general interest and of value and concern to the public." <u>Lane</u>, 134 S.Ct. at 2380. The public concern inquiry relies on the "content, form, and context" of the speech. <u>Id.</u> at 2380 (quoting <u>Connick v. Myers</u>, 461 U.S. 138, 147-48 (1983)). "Unlawful conduct by a government employee or illegal activity within a government agency is a matter of public concern." <u>Thomas v. City of Beaverton</u>, 379 F.3d 802, 809 (9th Cir. 2004). On the other hand, speech is generally not of public concern if it "deals with individual personnel disputes and grievances that would be of no relevance to the public's evaluation of the performance of governmental agencies . . . ." <u>Ellins v. City of Sierra Madre</u>, 710 F.3d 1049, 1057 (9th Cir. 2013) (internal quotation marks omitted).

Here, Jensen told members of the public on several occasions that a Boulder City police officer lied on the witness stand. Speech regarding such unlawful alleged conduct is clearly a matter of public concern. <u>Thomas</u>, 379 F.3d at 809; <u>see also</u> <u>Lane</u>, 134 S.Ct. at 2380 (testimony

---

"is fatal to the plaintiff's case," that are necessary to establish a First Amendment employment retaliation claim. 736 F.3d at 1257 (quoting <u>Dahlia v. Rodriguez</u>, 735 F.3d 1060, 1067 n.4 (9th Cir. 2013)). The first, second, and fourth <u>Hagen</u> factors—whether the plaintiff spoke on a matter of public concern, whether the plaintiff spoke as a private citizen or public employee, and whether the state possessed an adequate justification for treating its employee differently from the general public—correspond to the steps outlined in <u>Lane</u>, and therefore the Court sees no need to repeat them. Nevertheless, the Court does find it useful to set forth the remaining two <u>Hagen</u> factors (the third and fifth factors) here, particularly given that Defendants focus on them in their briefing. These factors were derived from previous Supreme Court precedent interpreting the balancing inquiry initially set forth in <u>Pickering</u> and were not overruled by <u>Lane</u>. See <u>Bd. of Cnty. Comm'rs v. Umbehr</u>, 518 U.S. 668, 675 (1996) ("To prevail [on a First Amendment retaliation claim], an employee must prove that the conduct at issue was constitutionally protected, and that it was a substantial or motivating factor in the termination. If the employee discharges that burden, the government can escape liability by showing that it would have taken the same action even in the absence of the protected conduct."). Therefore, the Court finds that these remaining <u>Hagen</u> factors do not conflict with the analysis set forth in <u>Lane.</u>

[2] Whether speech involves a matter of public concern is a pure question of law. <u>Eng v. Cooley</u>, 552 F.3d 1062, 1070 (9th Cir. 2009).

1  regarding corruption in a public program and misuse of government funds is a matter of public
2  concern). Although Jensen's speech dealt only with one individual police officer, his comments
3  regarding that officer were clearly relevant to the public's evaluation of its public officials and
4  agencies. Therefore, Jensen spoke on a matter of public concern.

Second, Jensen was speaking as a private citizen. A public employee "speaks as a private citizen if the speaker had no official duty to make the questioned statements, or if the speech was not the product of performing the tasks the employee was paid to perform." Ellins, 710 F.3d at 1058. Speech that is made pursuant to, or is mandated by, the employee's official job responsibilities is not subject to First Amendment protection. Hagen, 736 F.3d at 1257-58. In the law enforcement employment context, an employee typically speaks as an employee when reporting complaints or concerns internally according to the employer's policies, whereas communications to persons outside the workplace are generally made as a citizen. Id. at 1258. "While the question of the scope and content of a plaintiff's job responsibilities is a question of fact, the ultimate constitutional significance of the facts as found is a question of law." Eng, 552 F.3d at 1071.

In this case, the undisputed evidence shows that Jensen is a correctional officer employed by the Las Vegas Metropolitan Police Department and that he made the statements at issue on his days off while walking around Boulder City. The statements concerned a police officer employed by another city who, Jensen alleged, made false statements in connection with a criminal case brought against Jensen for dumping oil. It cannot legitimately be argued that Jensen's official duties as a correctional officer included speaking on his days off about police officers of other departments regarding their conduct in connection with a criminal case brought against him personally, nor can it be contended that he was paid to do so. Therefore, construing the evidence before it in the light most favorable to Jensen, the Court finds that Jensen was speaking as a private citizen.

As Defendants do not argue that their conduct satisfied the second step of the Lane inquiry (whether LVMPD had an adequate justification for treating Jensen differently from any other member of the general public), the Court does not reach that issue at this time.

### 3. Genuine Issues of Material Fact Exist As to Whether Jensen Was Disciplined for His Speech and Whether Defendants Would Have Taken the Same Action Regardless of His Speech

In their motion, Defendants argue that Jensen was not disciplined for his expression of speech, but rather simply for being convicted of a misdemeanor. Defendants also contend that the discipline Jensen received was the minimum he could have received based upon his misdemeanor conviction. Thus, Defendants dispute that Jensen has satisfied the First Amendment causation requirements as set forth in the Hagen factors: whether Jensen's protected speech was a substantial or motivating factor in his discipline and whether Defendants would have implemented the same discipline even absent Jensen's speech. Hagen, 736 F.3d at 1257; Umbehr, 518 U.S. at 675. The Court finds that genuine issues of material fact exist as to each issue.

*i. Whether Jensen's Speech Was a Substantial or Motivating Factor*

The "substantial or motivating factor" inquiry is a question of fact, and "the plaintiff bears the burden of showing . . . [that the] speech was a substantial or motivating factor in the adverse action." Eng, 552 F.3d at 1071 (alteration in original) (internal quotation marks omitted). In making this determination, courts take the plaintiff's allegations as true. Id. There are three ways a plaintiff can show that the speech was a substantial or motivating factor behind the defendant's adverse employment action: (1) by presenting evidence regarding the proximity in time between the speech and the employer's action that could support an inference of retaliation; (2) by presenting evidence "that his employer expressed opposition to his speech, either to him or to others"; and (3) by presenting evidence "that his employer's proffered explanations for the adverse employment action were false and pre-textual." Coszalter v. City of Salem, 320 F.3d 968, 977 (9th Cir. 2003) (internal quotation marks omitted).

In arguing that Jensen was not disciplined for his speech, Defendants point to the fact that Jensen received a 40-hour suspension—the minimum discipline available for cases in which an employee has engaged in or admitted conduct less than a felony under LVMPD's Handbook and Guide for Managers and Supervisors. See Mot. Summ. J. 7; id. Ex. G at 17, 19 ln. 25. Therefore, Defendants assert, Jensen's Criticism of Official Acts violation played no part in his discipline,

1  as the facts demonstrate that he was disciplined for his misdemeanor conviction.

2  The Court finds that Jensen has established a genuine issue of material fact as to whether his speech was a substantial or motivating factor in his discipline. First, although Jensen was convicted of a misdemeanor in October 2011, see Decl. of Andrew Walsh, Mot. Dismiss Ex. A, LVMPD did not discipline him for that conviction until January 2014—more than two years after Jensen's conviction, but just five months after IAB was notified of Jensen's public criticism of a Boulder City police officer. Adjudication of Compl., Mot. Summ. J. Ex. F.[3] Second, Jensen testified in his deposition that the individual Defendants expressed opposition to him regarding his speech. Dep. of Duane Jensen 30:13-18, 32:2-6, Mot. Summ. J. Ex. D. This evidence regarding the timing of Jensen's discipline and the opposition expressed by Defendants precludes summary judgment on whether Jensen's speech was a substantial or motivating factor in his discipline. See Coszalter, 320 F.3d at 977 ("Depending on the circumstances, three to eight months is easily within the time range that can support an inference of retaliation.").

Additionally, the fact that the Criticism of Official Acts violation was later removed from the Adjudication does not disprove that Jensen's discipline was at least partially based on that violation. "Curative measures simply do not tend to prove that a prior violation did not occur." Chuang v. Univ. of Cal. Davis, Bd. of Trustees, 225 F.3d 1115, 1130 (9th Cir. 2000). Indeed, given that Jensen was not disciplined until five months after the complaint was filed with IAB, the removal of the Criticism of Official Acts violation only draws attention to it, as it is this particular factual allegation which would require a more involved investigation as opposed to the simple issue of whether Jensen was convicted of a misdemeanor and failed to inform his superiors of that fact.

*ii. Whether Defendants Would Have Reached the Same Decision Absent Jensen's Speech*

If the government employer fails the two-step Lane test, "it may avoid liability by

---

[3] Although it is certainly possible that Defendants did not know of Jensen's conviction until they were notified of his speech activities in August 2013, a jury could likewise reasonably infer that Defendants did know, or reasonably should have known, of Jensen's conviction prior to that date, but chose to take no action until being informed of his criticisms of the police officer.

- 9 -

showing that the employee's protected speech was not a but-for cause of the adverse employment action." Eng, 552 F.3d at 1072; Umbehr, 518 U.S. at 675. This inquiry is "purely a question of fact," and courts must take the plaintiff's allegations as true in evaluating whether but-for causation exists. Eng, 552 F.3d at 1072. "Immunity should be granted on this ground only if the state successfully alleges, without dispute by the plaintiff, that it would have made the same employment decisions even absent the questioned speech." Id.

The Court finds that Jensen has established a genuine issue of material fact with respect to whether Defendants would have taken the same disciplinary action even if he had not made, or Defendants had not known of, the critical comments regarding another police officer. First, Defendants have not demonstrated undisputedly that Jensen would have automatically or definitely been disciplined for his misdemeanor conviction under LVMPD policy even absent his critical comments. This is to say that while conduct capable of disciplinary action (Jensen's conviction) was brought to the attention of IAB, the Court was not informed of any policy or practice by which IAB or LVMPD would lack the discretion to nonetheless decline to apply any disciplinary action based on that conduct. Rather, the Court understands LVMPD policy or practices to still allow discretion regarding the decision whether or not to recommend or implement disciplinary action after an investigation.

That IAB or LVMPD retained discretion over Jensen's discipline is supported by the deposition testimony of Captain Richard Suey, Jensen's supervisor and a member of the committee that developed the LVMPD disciplinary matrix. Dep. of Capt. Richard Suey 6:6-18, 27:20-21, Mot. Summ. J. Ex. I ("Suey Dep."). When asked, Captain Suey did not state that a major suspension would *automatically* result from an officer's misdemeanor conviction. Id. at 20:21-25, 21:1-10. Instead, Captain Suey stated that while a misdemeanor conviction violates the disciplinary matrix, "it also depends on how the complaint comes out." Id. at 20:8-10. Critically, Captain Suey also explained that while *in his experience* every officer charged with the Standards of Conduct violation received a major suspension, his experience consisted of only two such cases, and one of those cases went to arbitration where "the arbitrator reduced it, and they got the time back." Id. at 21:8-25. Given this evidence, Defendants have not met their

burden of demonstrating that they would have taken the same action even absent Jensen's speech.

**B. Personal Participation**

Defendants also argue that Lieutenant Walsh, Sergeant Barrett, and Officer Bozek cannot be held liable for violating Jensen's First Amendment rights because IAB itself does not issue any discipline. IAB investigates potential violations and makes recommendations, but the actual discipline imposed is ultimately determined by the officer's own chain of command. The Court finds that genuine issues of material fact exist as to whether Defendants Walsh, Barrett, and Bozek personally participated in the alleged violation of Jensen's First Amendment rights.

1. Legal Standard

Generally, under 42 U.S.C. § 1983,[4] "[l]iability arises . . . only upon a showing of personal participation by the defendant. A supervisor is only liable for constitutional violations of his subordinates if the supervisor participated in or directed the violations, or knew of the violations and failed to act to prevent them." Taylor v. List, 880 F.2d 1040, 1045 (9th Cir. 1989) (citation omitted). In assessing Section 1983 claims brought against subordinates and subordinate supervisors, however, liability can also be incurred "by setting in motion a series of acts by others which the actor knows or reasonably should know would cause others to inflict the constitutional injury." Lakeside-Scott v. Multnomah Cnty., 556 F.3d 797, 804 (9th Cir. 2009) (quoting Gilbrook v. City of Westminster, 177 F.3d 839, 854 (9th Cir. 1999)). This determination of whether subordinate liability exists "turns on the intensely factual determination of whether the superior never would have made [its] decision but for the subordinate's retaliatory conduct." Lakeside-Scott, 556 F.3d at 805 (internal quotation marks omitted).

2. Genuine Issues of Material Fact Exist As to Personal Participation

The Court finds that genuine issues of material fact preclude summary judgment with

---

[4] At the hearing held on May 6, 2015, the Court stated on the record that although Jensen's Amended Complaint purports to state a claim directly under the First Amendment, the Court construes it as an action under Section 1983, particularly given that Jensen was proceeding *pro se* at the time. See Arpin v. Santa Clara Valley Transp. Agency, 261 F.3d 912, 925 (9th Cir. 2001) ("[A] litigant complaining of a violation of a constitutional right does not have a direct cause of action under the United States Constitution but must utilize 42 U.S.C. § 1983.").

respect to each of the individual Defendants. With respect to Walsh, the evidence shows that the lieutenant supervising the IAB investigators must approve of the investigators' recommended findings before those findings can be sent to the allegedly offending officer's chain of command for the actual imposition of discipline. Suey Dep. at 18:21-25, 19:1-4. The Statement of Complaint shows that Walsh was assigned to Jensen's IAB complaint and that he completed his review of the complaint on October 30, 2013. Statement of Compl. 3, Mot. Summ. J. Ex. A. Moreover, Jensen testified that when he called IAB to voice his concerns about being disciplined for his speech, Walsh told him to "[i]nclude me in the lawsuit, too, because I was the one that approved that." Dep. of Duane Jensen 31:3-19, Mot. Summ. J. Ex. D.[5]

As for Bozek and Barrett, the evidence shows that they were assigned as investigator and supervisor, respectively, to the IAB complaint regarding Jensen's conduct. Statement of Compl. 6, Mot. Summ. J. Ex. A. The investigator is primarily responsible for completing the investigation of the complaint, while the sergeant reviews the investigation before both officers confer with their lieutenant. Suey Dep. at 18:21-23.

Based upon this evidence, genuine issues of material fact exist as to (1) whether Walsh, Barrett, or Bozek set in motion a series of actions by Jensen's commanding officers which they knew (or reasonably should have known) would lead to the alleged violation of Jensen's First Amendment rights, and (2) whether Jensen's chain of command never would have made the decision to suspend him but for the conduct of Walsh, Barrett, or Bozek. There is no evidence in the record to confirm that such a disciplinary process could have occurred without the participation of these officers. Indeed, the record supports an inference that this was the normal process by which discipline was imposed, that the Defendants were therefore an indispensable part of the imposition of discipline on Jensen.

**C. Qualified Immunity**

The Court also finds that the individual Defendants are not entitled to qualified immunity. In reaching this decision, the Court observes that the relevant question for purposes of qualified

---

[5] Contrary to defense counsel's assertion at oral argument, this statement is not hearsay as it was Walsh's own statement, offered against him by Jensen. Fed. R. Evid. 801(d)(2) (opposing party's statement is not hearsay).

immunity is not (as Defendants argue) whether they were entitled to investigate Jensen, as that is not the conduct that he alleges violated his First Amendment rights. Instead, the Court analyzes the decision to issue a disposition recommending discipline for the violation of Criticism of Official Acts.

### 1. Legal Standard

"Qualified immunity shields federal and state officials from money damages unless a plaintiff pleads facts showing (1) that the official violated a statutory or constitutional right, and (2) that the right was 'clearly established' at the time of the challenged conduct." Ashcroft v. al-Kidd, 131 S.Ct. 2074, 2080 (2011) (citing Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)). The conduct in question violates clearly established law "when, at the time of the challenged conduct, [t]he contours of [a] right [are] sufficiently clear that every reasonable official would have understood that what he is doing violates that right." al-Kidd, 131 S.Ct. at 2083 (alteration in original) (internal quotation marks omitted). While a case directly on point is not required in order for a right to be clearly established, "existing precedent must have placed the statutory or constitutional question beyond debate." Id. This ensures that the law has given officials "fair warning that their conduct is unconstitutional." Ellins, 710 F.3d at 1064. Further, the right must be defined at "the appropriate level of generality . . . [the court] must not allow an overly generalized or excessively specific construction of the right to guide [its] analysis." Cunningham v. Gates, 229 F.3d 1271, 1288 (9th Cir. 2000); see also al-Kidd, 131 S.Ct. at 2084. Finally, for qualified immunity purposes, the court must resolve factual disputes in favor of the party asserting the injury. Ellins, 710 F.3d 1049, 1064 (9th Cir. 2013).

### 2. The Individual Defendants Are Not Entitled to Qualified Immunity

The Court finds that Walsh, Barrett, and Bozek are not entitled to qualified immunity. First, as explained above, the Court has found that Jensen spoke as a private citizen on a matter of public concern and that there are genuine issues of material fact as to whether Jensen's speech was a substantial or motivating factor for his discipline and whether Defendants personally participated in the alleged violation. Therefore, resolving all disputes in favor of Defendant, the Court finds that Defendants violated Jensen's First Amendment Rights for the purposes of its

1  analysis of qualified immunity.

2  Second, the Court finds that Jensen's right to be free from retaliation for engaging in
3  protected speech was clearly established when he was disciplined in January 2014. "[I]n 1968,
4  the Supreme Court established that public employees have a First Amendment right to be free
5  from retaliation for commenting on matters of public concern, even when the protected
6  comments are critical of their employers." Ellins, 710 F.3d at 1065 (citing Pickering, 391 U.S. at
7  571). This right was reaffirmed in 1983, when the Supreme Court "stressed that speech on
8  matters of public concern occupies the 'highest rung of the heirarchy [sic] of First Amendment
9  values, and is entitled to special protection.'" Ellins, 710 F.3d at 1065 (alteration in original)
10 (quoting Connick v. Myers, 461 U.S. 138, 145 (1983)).

11 It was also clearly established that Jensen's speech was made as a private citizen on a
12 matter of public concern. In 2004, the Ninth Circuit held that "[u]nlawful conduct by a
13 government employee," which is what Jensen's speech alleged, "is a matter of public concern."
14 Thomas v. City of Beaverton, 379 F.3d 802, 809 (9th Cir. 2004). Moreover, Ninth Circuit
15 precedent in 2006 clearly established that a correctional officer's complaints to an elected public
16 official and an independent state agency regarding alleged sexual harassment in the workplace
17 constituted speech as a private citizen, as she had no official duty to make the complaints. Freitag
18 v. Ayers, 468 F.3d 528, 545 (9th Cir. 2006). And in Ellins, decided in March 2013, the Ninth
19 Circuit held that a police officer, acting in his capacity as police union president, spoke as a
20 private citizen when he led a union vote of no confidence against the police chief, and that the
21 chief could not reasonably believe it was lawful to delay the officer's application for a training
22 certificate that would have resulted in a pay raise because of his union activities. Ellins, 710 F.3d
23 at 1054-55, 1066. Finally, as early as 2009, "it was . . . clearly established under both Supreme
24 Court and Ninth Circuit precedent that the type of sanction need not be particularly great in order
25 to find that rights have been violated. It was also clearly established that deprivation of an
26 employee's salary is unconstitutional if levied in retaliation for protected speech." Ellins, 710
27 F.3d at 1065 (internal quotation marks and citation omitted) (citing cases).

28

Defendants argue correctly that "a reasonable but mistaken belief that [their] conduct was lawful would result in the grant of qualified immunity." Wilkins v. City of Oakland, 350 F.3d 949, 955 (9th Cir. 2003). In light of the above precedents protecting employee speech, however, the Court finds that a reasonable officer in Walsh's, Barrett's, or Bozek's position would have known that Jensen's comments regarding alleged unlawful conduct by another department's police officer, voiced to members of the public on his days off, constituted protected speech and that recommending that Jensen be disciplined for that speech, which resulted in a suspension from employment, violated Jensen's First Amendment rights. Therefore, the individual Defendants are not entitled to qualified immunity on Jensen's First Amendment claim.

V. CONCLUSION

For the reasons stated above,

IT IS ORDERED that Defendants' Motion for Summary Judgment (ECF No. 28) is DENIED.

DATED: August 3, 2015.

_____
**RICHARD F. BOULWARE, II**
**United States District Judge**